**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 08-cv-00560-REB

SHELLY A. SANCHEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY DECISION
AND DIRECTING AWARD OF BENEFITS**

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1] filed March 19, 2008, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*  I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument.  I reverse the decision and direct an award of benefits in plaintiff's favor.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that she is disabled as a result of fibromyalgia.  After her application for disability insurance benefits was denied initially, plaintiff requested a hearing before an administrative law judge.  A hearing was held on June 21, 2007.  At the time of this hearing, plaintiff was 40 years old.  She has a high school education and past work experience as a supermarket scan coordinator and field auditor and as a

counter clerk and ironer/presser for a dry cleaning business.  Plaintiff had not engaged in substantial gainful activity since her alleged date of onset, November 4, 2005.

The ALJ found that plaintiff was not disabled and, therefore, not entitled to disability insurance benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of such impairments did not meet or equal any presumptively disabling impairment listed in the social security regulations.  She determined that plaintiff had the residual functional capacity for light work with certain postural limitations.  Based on this determination, the ALJ found that plaintiff could return to her past work as a counter clerk.  The ALJ found plaintiff not disabled at step four of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that

the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff claims that the ALJ erred in basing her determination of plaintiff's residual functional capacity on the findings of a single decisionmaker ("SDM"). Because I agree, and do not find the error harmless, I reverse. Because I find that a proper consideration of the evidence would have supported no conclusion other than that

plaintiff is disabled, I direct an award of benefits in her favor.

In determining plaintiff's residual functional capacity, the ALJ rejected the opinions of two treating physicians[1] and a state agency consultative examiner and relied instead on the opinion of a "single decisionmaker' ("SDM"),[2] apparently mistakenly believing that the SDM was a medical doctor.  (*See* Tr. 16 (referring to SDM as "Dr. Lewis").)   An SDM, however, is not a medical professional of any stripe, and the opinion of an SDM, therefore, is entitled to no weight whatsoever.  ***Velasquez v. Astrue***, 2008 WL 791950 at *3 (D. Colo. Mar. 20, 2008) (Blackburn, J.) (citing ***Goupil v. Barnhart***, 2003 WL 22466164 at * 2, n.3 (D. Me. Oct. 31, 2003)).  It, thus, clearly was error for the ALJ to rely on this opinion in assessing plaintiff's residual functional capacity.

Nor is the error in this regard rectified by the ALJ's assertion that the SDM's "functional assessment is consistent with the modest clinical and physical examination findings from other medical sources," (Tr. 16), for at least two reasons.  First, such the

---

[1] The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also* **Watkins v. Barnhart**, 350 F.3d 1297, 1300 (10th Cir. 2003).  Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also* **Langley v. Barnhart**, 373 F.3d 1116, 1119 (10th Cir. 2004).  In either event, a treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. **Watkins**, 350 F.3d at 1301; **Goatcher v. United States Department of Health & Human Services**, 52 F.3d 288, 290 (10th Cir. 1995); **Frey v. Bowen**, 816 F.2d 508, 513 (10th Cir. 1987).

[2] Colorado is one of ten states participating in the Commissioner's Plan for a New Disability Claim Process. *See* 59 Fed. Reg. 47887 (Sept. 19, 1994).  This pilot program is testing several model procedures for streamlining the administrative review process, including use of a SDM, rather than a team composed of a disability examiner and a medical consultant, to make the initial determination of disability. *See* 62 Fed. Reg. 49598 (Sept. 23, 1997).

assertion is thoroughly unsubstantiated and untethered to any particular medical evidence of record. It, therefore, is little more than a conclusion in the guise of a finding and does not constitute substantial evidence. **See Hardman v. Barnhart**, 362 F.3d 676, 679 (10th Cir. 2004); **Bolan v. Barnhart**, 212 F.Supp.2d 1248, 1262 (D. Kan. 2002).

Second, and more importantly, the medical record, in fact, does not support the SDM's assessment of plaintiff's functional capacity. Plaintiff suffers from fibromyalgia.[3] The Tenth Circuit has recognized that "fibromyalgia presents a conundrum for insurers and courts evaluating disability claims." **Welch v. UNUM Life Insurance Co. of America**, 382 F.3d 1078, 1087 (10th Cir. 2004) (citation an internal quotation marks omitted). Proving the disease is difficult because

> [t]here are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

**Gilbert v. Astrue**, 2007 WL 1068104 at *4 (10th Cir. April 11, 2007) (quoting **Sarchet v. Chater**, 78 F.3d 305, 306 (7th Cir. 1996)). More to the point, "its symptoms are entirely subjective." **Id.** (quoting **Sarchet**, 78 F.3d at 306). **See also Rogers v. Commissioner**

---

[3] Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue," **Benecke v. Barnhart**, 379 F.3d 587, 589 (9th Cir. 2004), and results in "long-term but variable levels of muscle and joint pain, stiffness and fatigue," **Brosnahan v. Barnhart**, 336 F.3d 671, 672 n.1 (8th Cir. 2003). "Its cause or causes are unknown, [and] there is no cure[.]" **Sarchet v. Chater**, 78 F.3d 305, 306 (7th Cir. 1996).

*of Social Security*, 486 F.3d 234, 243 (6th Cir. 2007) ("[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs."). Thus, fibromyalgia "is diagnosed entirely on the basis of patients' reports and other symptoms." ***Benecke v. Barnhart***, 379 F.3d 587, 590 (9th Cir. 2004). ***See also Green-Younger v. Barnhart***, 335 F.3d 99, 107 (2nd Cir. 2003) (noting that "a patient's report of complaints, or history, is an essential diagnostic tool" in fibromyalgia cases).

For this reason, the ALJ's decision to discredit the opinions of plaintiff's treating rheumatologist, Dr. Patrick Timms, because they were inconsistent with the "modest clinical findings" is not supportable.[4] Findings of this nature are entirely consistent with a diagnosis of fibromyalgia. ***Preston v. Secretary of Health and Human Services***, 854 F.2d 815, 820 (6th Cir. 1988) (noting that persons suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion"). Likewise, the ALJ's decision to assign less weight to the consultative examiner's opinion because it was based on plaintiff's subjective reports cannot

---

[4] In addition, the ALJ's substantial reliance on plaintiff's activities of daily living to suggest that her residual functional capacity was greater than that found by Dr. Timms was not appropriate. *See* ***Thompson v. Sullivan***, 987 F.2d 1482, 1490 (10th Cir. 1993) (noting that activities of daily living do not translate well into a determination of what the claimant can do on a sustained basis in the workplace); *see also **Draper v. Barnhart***, 425 F.3d 1127, 1131 (8th Cir. 2005) (same).

Nor are all her findings in this regard supported by the record. For instance, the ALJ noted repeatedly that plaintiff was able to drive "independently." (*See* Tr. 14.) However, the Function Report plaintiff submitted in support of her claims states that "sometimes driving bothers me (my neck & arms) so my son will sometimes drive me where I need to go due to the side affects from pain meds." (Tr. 57.) The state agency physician noted that plaintiff reported "driving 80 to 90% less" due to her pain and other symptoms. (Tr. 95.) Similarly, the ALJ's spin on plaintiff's reports of "break through pain" following adjustment of her medications does not support the ALJ's conclusion that plaintiff's near constant pain was largely unresponsive to treatment. (*Cf.* Tr. 15 (ALJ opinion claiming that plaintiff's condition was "responsive to medication with only 'break through' pain"), *with* Tr. 288 (Dr. Timms's report that although new medication "did help initially," plaintiff now was "experiencing breakthrough pain").)

withstand scrutiny.[5]  Given accepted diagnostic protocols, a treating physician's reliance on such complaints "hardly undermines his opinion as to [the claimant's] functional limitations." ***Id.***  By essentially requiring plaintiff to present more evidence than this, therefore, "the ALJ effectively [was] requiring objective evidence beyond the clinical findings necessary for a diagnosis of fibromyalgia under established medical guidelines." ***Johnson v. Astrue***, 2009 WL 2151381 at *3 (1st Cir. July 21, 2009) (citation and internal quotation marks omitted; alternation in original).

It appears that the ALJ's own negative assessment of plaintiff's credibility colored her conclusion that the medical sources' reliance on plaintiff's subjective reports undermined their significance.  However, a physician's reliance on a plaintiff's subjective reports is not in itself sufficient ground to discredit her opinion.  ***See Nieto v. Heckler***, 750 F.2d 59, 60-61 (10th Cir. 1984).  Nothing in the record suggests that any treating or examining source considered plaintiff to be malingering or otherwise questioned the credibility of her subjective complaints of pain and other symptoms.[6]  By concluding otherwise, the ALJ improperly substituted her own judgment for that of the medical sources.  ***See McGoffin v. Barnhart***, 288 F.3d 1248, 1252 (10th Cir. 2002).

The Commissioner insists that the error was harmless, because the record supports a conclusion that there are jobs existing in significant numbers in the national and local economies that plaintiff could perform even if her residual functional capacity

---

[5] It also strikes this court as curious, at best, to have discredited Dr. Timms's opinion regarding plaintiff's residual functional capacity because it was based on a single visit while simultaneously adopting the opinion of a source who, in addition to having no medical expertise, had not examined plaintiff at all.

[6] Indeed, the state agency consultative examiner stated his belief that "the client was being truthful and the exam was performed with full cooperation even with limitations." (Tr. 95.)

were restricted to sedentary work.  (*See* Tr. 312-313.)  The finding of harmless error, although available, is an "exceptional circumstance,"and may be found only when it can be "confidently [said] that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." ***Allen v. Barnhart***, 357 F.3d 1140, 1145 (10th Cir. 2004).  That standard is not met here.  Had the ALJ assigned proper weight to the treating and examining source statements, plaintiff could not have been found capable of even sedentary work.  Dr. Timms opined that plaintiff could sit for no more than five minutes at a time, stand for five minutes at a time, and walk two minutes at a time, all for no more than two hours total of an eight-hour workday.  (Tr. 156.)  He also felt she needed to be able to sit or stand at will, frequently to take unscheduled breaks of up to fifteen minutes on an as needed basis, and likely was to be absent from work more than four days per month.  (Tr. 157-158.)  The vocational expert testified at the hearing that such limitations would preclude all marketable employment.  (Tr. 311-313.) [7]  Accordingly, the error was not harmless.

Plaintiff requests a directed award of benefits.  I find the circumstances of this case present an appropriate opportunity for the exercise of my discretion in that regard.  ***See  Nielson v. Sullivan***, 992 F.2d 1118, 1122 (10th Cir. 1993).  Although the medical record rightly could be described as somewhat sparse, given the lack of objective medical findings that may be expected to accompany a diagnosis of fibromyalgia, it is not clear what a remand for further development of the record could be expected to

---

[7] The opinion of the consultative examiner supports a similar conclusion.  (*See* Tr. 95) (crediting plaintiff's report that she can sit for up to an hour at a time, stand for fifteen to twenty minutes, and walk for ten to fifteen minutes).

accomplish.  A treating source and a consultative examiner both have opined that plaintiff's medical condition results in functional limitations that the record patently demonstrates preclude competitive employment.  The ALJ did not give adequate reasons to reject these opinions, and in the absence of any contrary medical opinions, the treating source opinion is entitled to controlling weight.  *See* 20 C.F.R. § 404.1527(d)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Under the circumstances, a remand would serve only to further delay an award of benefits to which plaintiff clearly is entitled.

  **THEREFORE, IT IS ORDERED** as follows:

  1.  That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

  2.  That **JUDGMENT SHALL ENTER** in favor of plaintiff and against the Commissioner;

  3.  That the Commissioner is **DIRECTED** to award plaintiff benefits as of November 4, 2005, the alleged date of onset of her disability; and

  4. That plaintiff is **AWARDED** her costs to be taxed by the Clerk of the Court pursuant to **FED.R.CIV.P**. 54(d)(1) and **D.C.COLO.LCivR** 54.1, and as permitted by 28 U.S.C. § 2412(a)(1).

  Dated December 10, 2009, at Denver, Colorado.

              **BY THE COURT:**

              */s/ Robert E. Blackburn*
              Robert E. Blackburn
              United States District Judge